# AFFIDAVIT IN SUPPORT OF
# A COMPLAINT AND ARREST WARRANT

I, Michael Finnerty, being first duly sworn, hereby depose and state as follows:

### *BACKGROUND*

1.     I make this affidavit in support of an application for a Complaint and arrest warrant charging Steven RIVERA with the offense of being a felon in possession of ammunition , in violation of 18 U.S.C. § 922(g) (the "TARGET OFFENSE").

2.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed since September of 2001. Previously, I worked as a Deputy United States Marshal with the U.S. Department of Justice for approximately three years. My responsibilities include investigating and enforcing the federal firearms laws. I attended the Criminal Investigator Training Program, at the Federal Law Enforcement Training Center ("FLETC"), in Glynco, Georgia, from May 1998 to August 1998, where I received training and instruction as a Criminal Investigator, including training involving: firearms, the execution of search and arrest warrants (including Fourth Amendment issues), and investigative techniques. Subsequently, from March 2002 to May 2002, I attended specialized training known as New Professional Training ("NPT") through ATF, at FLETC, where I received instruction in firearms technology and identification, firearms trafficking, explosives, and arson. During my career as a Special Agent, I have participated in the execution of numerous arrest warrants and search warrants. I have also participated in numerous investigations regarding the illegal sale and possession of firearms and ammunition. I have received training on, and am familiar with, the methods used to determine whether certain firearms or ammunition have traveled interstate and/or in interstate commerce.

3.     The facts in this affidavit come from my personal observations, my training and

experience, and information obtained from other agents and other sources. I have reviewed certain reports prepared by other law enforcement officers regarding their observations and other facts developed during this investigation. This affidavit does not contain every fact known to me with respect to this investigation. Rather, it contains those facts that I believe to be necessary to establish probable cause for issuance of the requested Complaint.

*PROBABLE CAUSE*

*February 14, 2017 Sale of Two Firearms and Ammunition*

4. In February 2017, ATF agents used a cooperating witness ("CW") to purchase certain firearms and ammunition from Steven RIVERA , as described below in more detail.[1]

5. On January 30, 2017, CW placed a recorded call to an individual he knew as "Skip," who is known to be Steven RIVERA.[2] CW did so at the direction and in the presence of

---

[1] CW has a criminal record, including a 2011 arrest for possession of a Class D controlled substance with intent to distribute (which was disposed via *nolle prosequi*), a 2007 arrest for burglary and damage to property (for which CW' NCIC report shows no disposition), a 2007 arrest for reckless operation of a vehicle and driving under the influence (for which CW' NCIC report shows no disposition), a 2005 arrest for misdemeanor driving under the influence (for which CW' NCIC reports "time expired restriction for non-criminal justice purposes"), a 2005 arrest for felony theft and felony possession of stolen items (for which CW' NCIC report shows no disposition), and a 1998 arrest for larceny of property worth more than $250 (for which CW' NCIC report shows "disposition unknown"). In addition, CW was arrested in or around June 2017 after CW was pulled over following an alleged shoplifting incident; when pulled over, CW possessed a BB gun. CW has cooperated in connection with other investigations and has been compensated by the Massachusetts State Police in connection with his or her cooperation (including with money and with assistance with relocation and associated living expenses). I am unaware of any instances in which CW has provided false information to investigators, and information provided by CW has been corroborated by other sources.

[2] All references to calls to or from RIVERA are to calls to or from 207-440-8169, a phone number serviced by T-Mobile. According to documents provided by T-Mobile, this phone is subscribed to Steven RIVERA at an address in Worcester, Massachusetts. I believe that RIVERA was in fact the user of this phone based, in part, on the fact that RIVERA appeared for

2

agents. During the call, CW asked RIVERA if he had any "toys;" RIVERA responded by saying "Yup."[3] CW then asked RIVERA if he still had the .357 and the .22, and RIVERA responded in the affirmative. On January 31, 2017, CW again placed a recorded call to RIVERA; again this was done at the direction and in the presence of agents. During this call, CW asked RIVERA if he still had the .357 and the .22, and RIVERA replied in the affirmative. CW asked how much for each firearm, and RIVERA replied $450 for the .357 and $350 for the .22.

6. On February 13, 2017, CW called RIVERA. This call was not recorded or monitored by agents, but has been corroborated through phone records. According to CW, during this call, RIVERA agreed to meet CW on February 14 in the area of Wendy's Restaurant on Southbridge Street in Worcester and agreed to sell CW two firearms.

7. On February 14, 2017, CW traveled to the parking lot of the Wendy's Restaurant at 702 Southbridge Street in Worcester, Massachusetts.[4] Agents conducted surveillance of CW at this location. While at this location, CW and RIVERA spoke on the phone; one side of this phone contact was recorded by the audio/video recorder on CW's person. Agents then observed RIVERA on foot walking towards CW' vehicle while carrying a white and red bag. RIVERA

---

in-person meetings that were arranged during calls on this phone, as described in more detail *infra*.

[3] Descriptions of conversations reflected in this affidavit are summaries and do not purport to reflect the entirety of the pertinent communications, nor do they purport to recount what was said verbatim. These summaries have been prepared in part from certain ATF reports produced during this investigation, rather than directly from recordings.

[4] Prior to this meeting, an agent searched CW and CW' vehicle for contraband, and found none. An agent then provided CW with $800 of ATF funds, a video/audio recorder, and a transmitter. An agent also placed an audio/video recorder/transmitter inside CW' vehicle. Agents then followed CW to the Wendy's Restaurant.

3

entered the passenger seat of CW' vehicle.  According to CW, RIVERA handed the white and red bag to CW, and CW provided $700 cash to RIVERA.[5]  Agents then observed RIVERA exit CW' vehicle and leave the parking lot in another vehicle.[6]

8. Agents examined the white and red bag that RIVERA had provided to CW, and found that it contained two revolvers and a white plastic bag that contained numerous .22-caliber rounds of ammunition.  One of these revolvers was a Harrington and Richards .22-caliber revolver, model 826.  The serial number on the frame and the butt of the revolver had been obliterated.  An agent opened the cylinder of the revolver and found that each of the six chambers was loaded with .22-caliber ammunition.  The other revolver was a Smith and Wesson .357-caliber-revolver, model 19-4.  An agent opened the cylinder of the revolver and found that each of the six chambers was empty.  A query of the serial number depicted on the Smith and Wesson revolver through the National Crime Information Center database revealed that this firearm had been stolen from Leicester, Massachusetts in 2005.

9. Certain of the .22-caliber rounds of ammunition that were contained in the plastic bag bear markings that indicate that they were manufactured by Remington.  Other of the .22-caliber rounds of ammunition that were contained in the plastic bag bear markings that indicate that they were manufactured by Federal Cartridge Co.  I know, based on my training and experience, and my communications with another ATF agent who examined a photograph of this

---

[5] Due to the angle of the recorder, RIVERA's face is not visible in this recording.

[6] Agents then followed the CW from the Wendy's parking lot to a prearranged location.  At this location, CW provided the white and red bag to an agent, as well as $100 of ATF funds.  An agent searched CW and CW' vehicle for contraband, and found none.

ammunition, that neither Remington nor Federal Cartridge Co. has ever manufactured ammunition in Massachusetts. I therefore believe that this ammunition had traveled in interstate commerce before RIVERA possessed it.

*February 15, 2017 Sale of Two Firearms and Ammunition*

10. On February 15, 2017, CW called RIVERA; this call was monitored and recorded. During the call, CW referenced "the other two," and RIVERA described an "old school 22" and an "old school 9."

11. On February 28, 2017, CW met with RIVERA at a location on Washburn Street in Worcester, Massachusetts. While at this location, CW and RIVERA spoke on the phone; one side of this phone contact was recorded by the audio/video recorder on CW's person. Agents then observed CW drive to a location on Washburn Street, and then drive to another location on Washburn Street. Agents conducting surveillance observed RIVERA exit a vehicle near this location and approach CW' vehicle. Agents then observed RIVERA open the passenger door of CW's vehicle and place a white bag on the front passenger seat of the vehicle. In the video of this transaction, CW is seen handing cash to RIVERA, which RIVERA places in a front pant pocket.[7]

12. Agents examined the white bag that RIVERA had provided to CW, and found that

---

[7] Prior to this meeting, an agent searched CW and CW' vehicle for contraband, and found none. An agent then provided CW with $600 of ATF funds, a video/audio recorder, and a transmitter. An agent also placed an audio/video recorder/transmitter inside CW' vehicle. Following the interaction between RIVERA and CW, agents then followed the CW from the location of the transaction to a prearranged location. At this location, CW provided the white bag to an agent, as well as $100 of ATF funds. An agent searched CW and CW' vehicle for contraband, and found none.

5

it contained two handguns, five loose rounds of .22-caliber ammunition, and a black pistol magazine containing eight rounds of .9-caliber ammunition. One of these handguns was a Luger style .9-millimeter pistol, with an empty magazine well and an empty chamber. The other handgun was a Harrington and Richards .22-caliber revolver, model 929.

### *Gun and Drug-Related Activity in March 2017*

13. During subsequent recorded phone conversations between CW and RIVERA in March 2017, RIVERA made certain references to "brown." Based on my training and experience, I believe that RIVERA was referring to heroin. On March 3, 2017, during a recorded conversation, RIVERA told CW "I have grams. I only have brown right now." Based on my training and experience, I believe that RIVERA was offering to sell heroin ("brown") to CW. On March 8, 2017, in a recorded conversation, in reference to a third party, RIVERA stated "I heard he has some crazy brown around the hood. My boy tried it he almost dropped." RIVERA then offered to sell CW a "chopper" for $2,000. Based on my training and experience, I believe that RIVERA was referencing particularly potent heroin ("crazy brown") that nearly caused an overdose ("my boy… almost dropped"), and was offering to sell an AK-47 or similar-style rifle ("chopper").

14. CW subsequently attempted to purchase another firearm from RIVERA, but RIVERA failed to appear at an arranged meeting location on March 9, 2017, and failed to call CW after indicating that he would do so.

### ***RIVERA'S CRIMINAL HISTORY***

15. I have seen a certified copy of the criminal docket in Case No. 1162CR001079 (Worcester District Court), which shows that RIVERA was convicted of Resisting Arrest in violation of MGLA chapter 268, § 32B on June 14, 2011. A violation of this provision of

Massachusetts law is punishable by a term of imprisonment of not more than two and one-half years. In addition, RIVERA's criminal history reflects that he was found guilty of Distribution/Dispensing of a Class B controlled substance (a crime punishable by more than one year of imprisonment) in two separate cases in 2011 (Dockets 1162CR003289A and 1062CR008418A, both in Worcester District Court).[8] By virtue of each of these convictions, Rivera was a felon at the time he possessed the aforementioned firearms and ammunition in February 2017.

## CONCLUSION

16. Based on the foregoing, I respectfully submit that there is probable cause to believe that RIVERA has committed the TARGET OFFENSE.

WHEREFORE, your affiant requests that this Court issue the requested criminal complaint.

_____
Michael Finnerty
Special Agent, ATF

Subscribed and sworn to before me this 23rd day of June, 2017.

_____
The Hon. David H. Hennessy
United States Magistrate Judge

---

[8] RIVERA's criminal history reflects that his case in Docket 1062CR008418A was initially continued without a finding, but that he was subsequently adjudicated guilty and ultimately sentenced to six months of committed time.